**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| MAURICIO ALEXANDER ORELLANA QUINTANILLA, )<br><br>Plaintiff, )<br><br>v. )<br><br>MARKWAYNE MULLIN, *et al.*, )<br><br>Defendants. ) | Civil Action No. 25-cv-02513-LKG<br><br>Dated: May 27, 2026 |

**MEMORANDUM OPINION ON**
**PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

On December 18, 2025, the Plaintiff, Mauricio Alexander Orellana Quintanilla, filed a second amended complaint in the above-captioned civil matter, challenging his removal from the United States before being granted a reasonable fear interview ("RFI") under 8 C.F.R. §§ 208.31 and 1208.31.[1]  ECF No. 34.  On January 9, 2026, the Plaintiff filed a renewed motion for preliminary injunction, seeking, among other things, a court order ordering the Defendants to facilitate his return to the United States from Mexico, to conduct an unlawfully withheld RFI, and enjoining the Defendants from removing him from the United States while he awaits an RFI. ECF No. 37.  On January 9, 2026, the Defendants filed a motion to dismiss the amended complaint, or in the alternative to transfer venue, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) and 12(b)(6).  ECF No. 38.

These motions are fully briefed.  ECF Nos. 37, 38, 39, 40, 43 and 44.  The Court held a hearing on these motions on May 19, 2026.  ECF No. 47.  For the reasons that follow, and those

---

[1] On October 13, 2025, the Plaintiff filed a motion for leave to file first amended and supplemental complaint and amended and supplemental petition for writ of habeas corpus in addition to a motion for preliminary injunction.  ECF Nos. 18–19.  The Court denied the Plaintiff's motions without prejudice on October 31, 2025.  ECF No. 23.  On November 10, 2025, Plaintiff filed a motion for leave to file a "Second Amended and Supplemental Complaint."  ECF No. 24.  On December 18, 2025, the Court granted Plaintiff's motion for leave to file a second amended and supplemental complaint, deeming the second amended complaint filed as of December 18, 2025.  ECF No. 32.  On December 23, 2025, the Court ordered the parties to file any motions for preliminary injunction and dispositive motions by January 9, 2026.  ECF No 36.

stated during the May 19, 2026, hearing, the Court: (1) **DENIES** the Defendants' motion to dismiss (ECF No. 38) and (2) **GRANTS-in-PART** the Plaintiff's renewed motion for a preliminary injunction (ECF No. 37).

## II.   FACTUAL BACKGROUND

The following facts are undisputed in this case. On October 2, 2015, the Plaintiff received a Notice of Intent/Decision to Reinstate Prior Order, pursuant to 8 U.S.C. § 1231(a)(5). ECF No. 37 at 1. On January 3, 2019, the Plaintiff was granted withholding of removal to his native El Salvador, pursuant to 8 U.S.C. § 1231(b)(3). *Id.*

Thereafter, the Plaintiff was released from custody on an Order of Supervision on January 10, 2019, and he lived and worked lawfully in the United States. *Id.* On July 31, 2025, the Plaintiff's supervised release was revoked, and he was taken back into custody by Immigration and Customs Enforcement ("ICE"). On that same day, the Defendants advised the Plaintiff that they intended to remove him to Mexico. *Id.*

The Plaintiff's immigration attorneys requested an RFI by e-mail on September 16, 2025, and on September 24, 2025. *Id.* But, the United States Citizenship and Immigration Services ("USCIS") advised the Plaintiff's immigration counsel that ICE had not yet referred the case for an RFI as of the morning of September 25, 2025. *Id.*

At approximately 7:30 pm East Coast time (6:30 pm local time in Texas) on September 25, 2025, the Plaintiff's immigration counsel again requested an RFI for the Plaintiff *via* e-mail. *Id.* at 1–2. This email included a signed statement from the Plaintiff stating that:

> I am also afraid of being sent to Mexico, as the MS-13 gang that killed my uncle, believes I am affiliated with a rival gang is there too. I am afraid they will harm or even kill me. I also fear going to Mexico as I have no legal status, protection, or support in any other country in the world. I fear I will be in serious danger if I am deported to Mexico."

*Id.* at 2.

On the evening of September 25, 2025, the Plaintiff filed a motion for a temporary restraining order, requesting that the Court preliminarily enjoin the Defendants from removing the Plaintiff from the continental United States, unless he has first been afforded an RFI and an immigration judge review. ECF No. 12. On the morning of September 26, 2025, ICE officers removed the Plaintiff from the United States to Mexico without affording the Plaintiff an RFI. ECF No. 37 at 2. And so, the Court denied the Plaintiff's motion for a temporary restraining order as moot. ECF No. 16.

The Plaintiff was transported to Villahermosa, Tabasco, Mexico.  ECF No. 37 at 2.  The Plaintiff alleges that he was deported to Mexico with no identification, because ICE officers retained his passport, work permit, driver's license and Social Security card.  *Id.*

The Plaintiff also alleges that he has no lawful status to remain in Mexico and that he fears that he will be removed to El Salvador.  *Id*.  It is undisputed that an immigration judge has previously determined that it is more likely than not that the Plaintiff would be persecuted or tortured if he is returned to his home country of El Salvador.  *Id.* at 16.

## III.  STANDARDS OF DECISION

### A.  Preliminary Injunction

The Court may issue a preliminary injunction upon notice to the adverse party.  Fed. R. Civ. P. 65(a).  The party seeking a preliminary injunction bears the burden of justifying such relief.  *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014); *Wagner v. Bd. of Educ.*, 335 F.3d 297, 302 (4th Cir. 2003).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943 (2018) (per curiam); *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc).  Rather, a preliminary injunction is "'granted only sparingly and in limited circumstances.'"  *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation omitted).  To qualify for a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits."  *Winter*, 555 U.S. at 20.  While this standard does not require "a 'certainty of success,'" the plaintiff "'must make a clear showing that he is likely to succeed at trial.'" *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted).

The Court must also consider three other factors: "whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Id.* (quoting *Winter*, 555 U.S. at 20); *see also Centro Tepeyac*, 722 F.3d at 188 (applying the standard for preliminary injunctions set forth in *Winter*).  "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)).

A harm is "irreparable" if it "'cannot be fully rectified by the final judgment after trial.'" *Id.* (citation omitted); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough."). As for the balance of equities and public interest prongs, these two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And so, a preliminary injunction cannot be issued unless all four factors are satisfied. *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013).

### B. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1995) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Given this, the Court "regard[s] the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* (citation omitted). And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

### C. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

### D.  Fed. R. Civ. P. 12(b)(3)

This Court has held that "[a] defendant may challenge the sufficiency of a plaintiff's choice of venue by way of a motion under Rule 12(b)(3)." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 549 (D. Md. 2019). When such a challenge is raised, the plaintiff bears the burden of demonstrating that venue is appropriate. *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d 95, 109 (D. Md. 2021); *see also Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (finding that the plaintiff has the burden to make a *prima facie* showing that venue is proper in the district where a case is filed). And so, where venue is improper, a court should either dismiss the case or transfer it to another district court in which it could have been brought. *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

## IV.  ANALYSIS

The Defendants have moved to dismiss this matter, or, to transfer the case to the United States District Court for the Western District of Texas, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(3) and (b)(6) upon the following four grounds: (1) the Court does not possess subject-matter jurisdiction to order the requested relief in this case; (2) the Court is precluded from considering the Plaintiff's claims in light of the pending non-opt out class action in *D.V.D., et al. v. DHS*, No. 25-cv-1067 (D. Mass.); (3) Maryland is not the proper venue for the Plaintiff's claims; and (4) the Plaintiff's claims are premised on regulations that are not applicable to third-country removals. ECF No. 40 at 9–23. And so, the Defendants request that the Court dismiss the second amended complaint. *Id*. at 23.

The Plaintiff counters that dismissal of his claims is not warranted, because: (1) the Court

possesses subject-matter jurisdiction to consider his claims; (2) the litigation in *D.V.D., et al. v. DHS*, No. 25-cv-10676 (D. Mass.) does not preclude the Court from considering his claims; (3) venue is proper in the District of Maryland; and (4) he has stated a claim under the applicable regulations. ECF No. 39 at 5–16. And so, the Plaintiff requests that the Court deny the Defendants' motion to dismiss. *Id*. at 16.

The Plaintiff has also moved for a preliminary injunction, ordering the Defendants to facilitate his return to the United States from Mexico to conduct an unlawfully withheld RFI, and enjoining the Defendants from removing him from the United States while he awaits an RFI, upon the grounds that: (1) he has shown a likelihood of success on the merits, because the Defendants violated federal regulations and Department of Homeland Security ("DHS") policy by removing him to Mexico without first providing an RFI; (2) the Court possesses the power to order the Defendants to facilitate his return to the United States; and (3) the remaining *Winter* factors favor entry of a preliminary injunction. ECF No. 37 at 5–18. And so, the Plaintiff requests that the Court grant his motion for a preliminary injunction. *Id.* at 18.

The Defendants counter that the Plaintiff is not entitled to a preliminary injunction, because: (1) the Plaintiff cannot establish a likelihood of success on the merits, because: (a) the Court lacks subject-matter jurisdiction to order the relief requested; (b) the Court is precluded from considering the Plaintiff's claims in light of the pending non-opt out class action in *D.V.D., et al. v. DHS*, No. 1:25-cv-10676-BEM (D. Mass.); (c) Maryland is not the proper venue for the Plaintiff's claims; and (d) the Plaintiff's claims are premised on regulations that are not applicable to third-country removals; and (2) the Plaintiff fails to satisfy the other requirements for preliminary injunctive relief. ECF No. 40 at 4–7. And so, the Defendants request that the Court deny the Plaintiff's motion. *Id*. at 7.

For the reasons that follow, the Plaintiff has shown that: (1) the Court has subject-matter jurisdiction to the consider the claims in this case; (2) venue is proper in this District; and (3) the pending *D.V.D.* class action does not preclude his claims. The evidence before the Court also shows that: (1) the Plaintiff has demonstrated a substantial likelihood of success on the merits of his claims; (2) he will be irreparably harmed, absent the requested injunctive relief; and (3) the remaining *Winter* factors support preliminary injunctive relief. And so, the Court: (1) DENIES the Defendants' motion to dismiss (ECF No. 38) and (2) GRANTS-in-PART the Plaintiff's renewed motion for a preliminary injunction (ECF No. 37).

6

**A.    The Court Possesses Jurisdiction To Consider The Plaintiff's Claims**

As an initial matter, the Court is satisfied that it possesses subject-matter jurisdiction to resolve this dispute under 28 U.S.C. § 1331.

Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions arising under the Constitution and federal laws of the United States.  28 U.S.C. § 1331; *Lee v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (citation modified).  In this case, the Plaintiff relies upon Section 1331 and the APA to establish jurisdiction.  *See* ECF No. 39 at 7–9. Notably, the Plaintiff brings, among others, APA, Fifth Amendment Due Process and *Accardi* claims in this case.  ECF No. 34 at 6–8.  The Court may consider these claims under the federal question statute.  28 U.S.C. § 1331; *Lee v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d at 619 (citation modified).  And so, the Plaintiff has shown that the Court posses subject-matter jurisdiction to consider his claims.

The Defendants' argument that the Court is stripped of jurisdiction in this case pursuant to 8 U.S.C. § 1252(g) is also unpersuasive.  As the Fourth Circuit has recognized, 8 U.S.C. § 1252(g) strips federal courts of jurisdiction over claims involving the Attorney General's exercise of lawful discretion to commence, adjudicate and execute removal orders.  *Abrego Garcia v. Noem*, 2025 WL 1021113, at *2 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring) (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999)).  But the Supreme Court has held that where the jurisdictional facts in a case are intertwined with the merits, dismissal on jurisdictional grounds is improper.  *Bell v. Hood*, 327 U.S. 678, 681–82 (1946).

Here, the Plaintiff alleges that his removal to Mexico was not lawful, because the Defendants failed to comply with mandatory regulatory requirements before executing the removal order.  *See* ECF No. 34 at 6–10.  Given this, the jurisdictional facts of this case are intertwined with the merits of whether the Plaintiff's removal to Mexico was lawful.  And so, the Court declines to dismiss this matter on jurisdictional grounds.  *Bell*, 327 U.S. at 681–82.

**B.    Venue Is Proper In The District Of Maryland**

The Court is also satisfied that venue for this case is proper in the District of Maryland, because the Plaintiff is domiciled in Maryland.

Pursuant to 28 U.S.C. § 1391(e)(1)(C), a civil action against a federal officer, employee or agency may be brought in any judicial district in which "the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1)(C).  Courts have held that a natural person is a

7

resident of any district in which he or she is lawfully domiciled, meaning one who "lives in the district and possesses a lawful intent to remain." *Coyoy v. United States*, 526 F. Supp. 3d 41, 41 (D.N.J. 2021). Relevant to this dispute, courts have also held that a prisoner or detainee does not acquire a new domicile upon involuntary incarceration in another state, but retains his pre-incarceration domicile. *See, e.g.*, *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004); *Nagalingam v. Wilson, Sowards, Bowling & Costanzo*, 8 F. App'x 486, 488 (6th Cir. 2001).

Here, the evidence before the Court shows that the Plaintiff is domiciled in Maryland. It is undisputed that prior to his ICE detention, the Plaintiff resided in Maryland under a valid Order of Supervision for more than six years. ECF No. 37 at 3; ECF No. 39. It is also undisputed that no real property is involved in this action. *See* ECF Nos. 38, 39 and 44. Given this, venue is proper in Maryland, because the Plaintiff was domiciled in Maryland prior to his detention and he has selected Maryland as the forum for this dispute.[2]

The Government has also not shown, by a preponderance of the evidence, that transfer of venue to the United States District Court for the Western District of Texas is warranted in this case pursuant to 28 U.S.C. § 1404(a). Even where venue is facially proper, a transfer may be granted, pursuant to 28 U.S.C. § 1404(a) for the convenience of parties and witnesses and in the interest of justice. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). In deciding a motion to transfer under Section 1404(a), this Court considers four factors: (1) the weight accorded to the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Id.* Because a laintiff's choice of venue is entitled to substantial weight, a defendant seeking transfer must show, by a preponderance of the evidence, that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice. *Corcoran*

---

[2] The Government's argument that Plaintiff could not possess a lawful intent to remain in Maryland, because he was subject to a final order of removal is unavailing. This argument conflates the existence of a removal order with the absence of lawful presence. Indeed, the majority of courts to have considered analogous circumstances have found domicile established under comparable facts. *See Coyoy*, 526 F. Supp. 3d at 41; *Tanyike v. United States*, 603 F. Supp. 3d 572 (S.D. Ohio 2022); *Luna v. United States*, 2021 WL 673534, at *2 (W.D. Wash. Feb. 22, 2021). And so, the Plaintiff's subsequent involuntary detention outside Maryland did not alter his Maryland domicile. *Poucher*, 336 F. Supp. 2d at 253.

*v. Peleus Ins. Co.*, No. 20-1115, 2021 WL 3472664, at *4 (D. Md. Aug. 6, 2021).  And so, the Plaintiff's choice of forum, particularly where it is his home state, should rarely be disturbed unless the balance of factors strongly favors the defendant.  *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

In this case, with regards to convenience of the parties and witnesses, the Court agrees with the Defendants that many aspects of the Plaintiff's ICE detention occurred outside of Maryland.  But the Plaintiff has limited his claims relate to certain email communications sent by his attorneys to ICE on September 16, 24, and 25, 2025.  *See* ECF No. 39 at 15.  Given this, it is not likely that the Court will require the testimony of ICE witnesses located in Louisiana and Texas to resolve the dispute.  The Plaintiff also represents that his attorneys, who may be witnesses in this case, reside in Northern Virginia.  *See id.* at n.4.  And so, his District is more convenient for these potential witnesses.

The Defendants' interest-of-justice argument is equally unavailing.  Immigration enforcement is exclusively a matter of federal law and does not present a local controversy giving any particular district a special interest in the outcome.  *Arizona v. United States*, 567 U.S. 387, 394 (2012).  Lastly, the Court observes that it is already familiar with the facts and legal issues in this case.  Given this, judicial economy also strongly favor retaining the case in this District.  And so, the Court DENIES the Government's motions to dismiss for improper venue and to transfer.

### C.    The *D.V.D.* Litigation Does Not Preclude The Plaintiff's Claims

The Government's argument that the ongoing *D.V.D.* litigation in the District of Massachusetts precludes Plaintiff's claims is equally unavailing.

To date, no final judgment has been entered by the district court in that class action litigation.  *See D.V.D., et al. v. U.S. Department of Homeland Security, et al.*, 25-cv-10676 (D. Mass.).  *See Providence Hall Assocs. P'ship v. Wells Fargo Bank*, 816 F.3d 273, 276 (4th Cir. 2016) (holding that a final judgment is needed to apply the doctrine of *res judicata* and collateral estoppel); *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

The compelling circumstances of this case also override any residual interest in prudential abstention due to the *D.V.D.* litigation. Notably the Plaintiff alleges that he is currently in hiding in Mexico, due to a fear of Mexican cartels and that he is at risk of deportation to El Salvador.  And so, the Court is satisfied that the *D.V.D.* litigation does not preclude this Court from considering the Plaintiff's claims.

### D.    The Plaintiff Has Demonstrated A Likelihood Of Success On The Merits

Turning to the merits of the Plaintiff's claims, the Plaintiff has shown a likelihood of success on the merits of his claims. The Plaintiff argues that the Government violated 8 C.F.R. §§ 208.31 and 1208.31, and DHS policy, by removing him to Mexico without first conducting an RFI. *See* ECF No. 37 at 7. For the reasons that follow, the Court agrees.

To qualify for a preliminary injunction, the Plaintiff must establish, among other things, that he is likely to succeed on the merits. *Winter*, 555 U.S. at 20. While this standard does not require "a certainty of success," the plaintiff "must make a clear showing that he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation modified).

Relevant here, DHS's regulations regarding the RFI process are set forth in 8 C.F.R. §§ 208.31 and 1208.31. Pursuant to these regulations, a noncitizen subject to a reinstated removal order who expresses fear of removal is entitled to an RFI before removal. 8 C.F.R. §§ 208.31 and 1208.31. In this regard, 8 C.F.R. § 208.31(b) provides that, upon issuance of a notice that an alien "is subject to removal," the alien "shall be referred to an asylum officer for a reasonable fear determination." 8 C.F.R. § 208.31(b). 8 C.F.R. § 241.8(e) also provides that if "an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31." And so, there is a mandatory requirement to conduct an RFI when an alien expresses a fear of returning to the country designated in a removal order. *See id.*

In addition, 8 C.F.R. § 241.8(f) provides that the "execution of the reinstated order of removal and detention of the alien shall be administered in accordance with [the regulations governing the apprehension and detention of aliens ordered removed]." 8 C.F.R. § 241.8(f). And so, the Court reads these regulations to require that the Government provide an RFI in connection with the subsequent execution of the reinstated order of removal. *See Nolasco Renderos v. Baker*, 814 F. Supp. 3d 598, 603 (D. Md. 2026).

DHS's regulations also provide that, if an asylum officer finds that the noncitizen has not established a reasonable fear, the officer must inquire whether the noncitizen wishes for an immigration judge to conduct a *de novo* review and, if so, refer the case to an immigration judge. 8 C.F.R. §§ 208.31(e) and 1208.31(f)–(g). Given this, the Court has explained that:

> Congress has prohibited the Executive Branch from removing persons to any country where they are likely to be tortured or persecuted on protected grounds, and the regulations that implemented those statutory

10

> protections in the context of reinstated orders of removal have selected a procedure for adjudicating such claims: a reasonable fear interview followed by, if negative and upon request, immigration judge review.

*Nolasco Renderos*, 814 F. Supp. 3d at 605. And so, under the *Accardi* doctrine, an agency's "failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination." *Santamaria Orellana v. Baker*, 2025 WL 2841886, at *10 (D. Md. Oct. 7, 2025).

Here, the Plaintiff has shown that DHS removed him to Mexico without first providing an RFI. It is undisputed that, the Plaintiff's immigration attorneys requested an RFI by e-mail on September 16, 2025, and on September 24, 2025. ECF No. 37 at 2. But no RFI was provided. ECF No. 37 at 4; ECF No. 38-1 at 5–8. The parties also agree that, on September 25, 2025, the Plaintiff's immigration counsel again requested an RFI for the Plaintiff *via* e-mail. ECF No. 37 at 4. This email included a signed statement from the Plaintiff stating that:

> I am also afraid of being sent to Mexico, as the MS-13 gang that killed my uncle, believes I am affiliated with a rival gang is there too. I am afraid they will harm or even kill me. I also fear going to Mexico as I have no legal status, protection, or support in any other country in the world. I fear I will be in serious danger if I am deported to Mexico.

*Id.* at 2. But on the morning of September 26, 2025, ICE officers removed the Plaintiff from the United States to Mexico without affording the Plaintiff an RFI. ECF No. 37 at 2.

And so, there is no dispute that the Plaintiff was not afforded an RFI after he expressed a reasonable fear of removal to Mexico on September 16, 24 and 25, 2025. The Plaintiff's removal under these circumstances is plainly in violation of DHS's RFI regulations.

The Defendants' arguments to show that the Plaintiff's removal was lawful are also unconvincing. The Defendants first argue that 8 C.F.R. §§ 208.31 and 1208.31 do not apply to this case, because the Plaintiff's removal to Mexico constituted a "third country removal" that is governed by 8 U.S.C. § 1231(b)(3). ECF No. 40 at 4–6. 8 U.S.C. § 1231(b)(3)(A) provides that: "Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). But the Court reads the plain text of 8 C.F.R. §§ 208.31 and 1208.31 to apply upon issuance of notice that the alien is subject to removal under a reinstated order of removal. Pursuant to 8 C.F.R. § 208.31(b), the reasonable fear determination procedure is

11

triggered "[u]pon issuance of a . . . notice under § 241.8(b) of this chapter that an alien is subject to removal." 8 C.F.R. § 208.31(b). That "notice" is explicitly defined as notice that an officer has "determine[d] that an alien is subject to removal under this section." 8 C.F.R. § 241.8(b). Notably, the regulations provide that "upon issuance of a notice that an alien 'is subject to removal,' the alien 'shall be referred to an asylum officer for a reasonable fear determination.'" 8 C.F.R. § 241.8(e). In addition, if:

> [A]n alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31.

*Id.* And so, the Court does not agree with the Defendants that Congress intended for a third country removal to fall outside the scope of these regulations. *Santamaria Orellana v. Baker*, No. 25-1788, 2025 WL 2841886, at *11–*12 (D. Md. Oct. 7, 2025).

Indeed, reading 8 C.F.R. §§ 208.31, 1208.31 and § 241.8 to apply only at the moment of the initial reinstatement of a removal order, as the Defendants suggest, would render 8 C.F.R. § 241.8(f)'s command that execution of reinstated orders "shall be administered in accordance with this part," entirely meaningless. *Nolasco Renderos*, 814 F. Supp. 3d at 603–04. And so, the Plaintiff is entitled to an RFI upon his expression of a reasonable fear of removal to Mexico, because his removal order has been reinstated under Section 1231(a)(5).

The Court also reads the above regulations to apply whenever a person asserts a fear of being sent to the country to which the Defendants seek removal, regardless of whether that country is the person's country of origin. Again, the regulations repeatedly refer to reasonable fear of removal without suggesting that an RFI is available only as to the country from which the person arrived. 8 C.F.R. §§ 208.31 and 1208.31. And so, a reading of these regulations to require that noncitizens either anticipate every country to which the Government might attempt to remove them in the future, or lose access to the reasonable fear process if a new country is later designated for removal, appears to be contrary to Congress's intent. *See id.*; *see also* 8 U.S.C. § 1231(b)(3)(A).[3]

---

[3] The Defendants previously argued that counsel cannot request an RFI on behalf of the Plaintiff and that the emails at issue in this case are not sufficient to trigger the Government's screening obligations under 8 C.F.R. §§ 208.31 and 1208.31. But an attorney's acts and representations made within the scope of representation are legally attributable to the client. And so, an alien "is generally bound by the conduct of his or her attorney." *Matter of Velasquez*, 19 I. & N. Dec. 377, 382 (BIA 1986); *see also* 8 C.F.R. § 292.5(a).

In sum, the factual record currently before the Court shows that the Plaintiff requested an RFI on three separate occasions prior to his removal to Mexico, and that the Defendants failed to provide an RFI as required under the applicable regulations and DHS policy. Given this, the Plaintiff has demonstrated a substantial likelihood of success on the merits of his claim that the Defendants, among other things, violated 8 C.F.R. §§ 208.31 and 1208.31 and DHS policy, by failing to provide an RFI.

### E.    The Other *Winter* Factors Favor Entry Of A Preliminary Injunction.

The Court is also satisfied that the Plaintiff has satisfied the remaining *Winter* factors, because he has shown irreparable harm absent injunctive relief, and that the balance of the equities and public interest favor entry of a preliminary injunction.

To establish irreparable harm, the Plaintiff must make a clear showing that he will suffer harm that is neither remote nor speculative, but actual and imminent. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019). This Court has previously held that removal to a country where a noncitizen faces risk of torture, beatings and even death clearly and unequivocally supports a finding of irreparable harm. *Santamaria Orellana v. Baker*, 2025 WL 2841886, at *12 (D. Md. Oct. 7, 2025). The Court has also held that, where a plaintiff has established a likely violation of a constitutional right, that violation itself constitutes irreparable harm. *Am. Coll. of Obstetricians & Gynecologists v. FDA*, 472 F. Supp. 3d 183, 228 (D. Md. 2020).

Here, the Plaintiff has shown irreparable harm, because he is in hiding in Mexico and fears deportation to his home country of El Salvador. ECF No. 37 at ¶ 12. It is undisputed that the Plaintiff was granted withholding of removal to his native El Salvador under 8 U.S.C. § 1231(b)(3) on January 3, 2019. *Id.* at 3. And so, the Plaintiff's removal from Mexico to El Salvador would cause irreparable harm to the Plaintiff.

The balance of equities and the public interest also favor granting injunctive relief. First, the Defendants have no legitimate interest in maintaining an unlawful removal. The public interest is also served by requiring the Defendants to comply with their own regulations. And so, the Court is satisfied that the remaining *Winter* factors are met in this case.

### F.    The Plaintiff's Requested Relief

Having determined that the Plaintiff has established a substantial likelihood of success on the merits of his claims and that the other *Winter* factors support granting preliminary injunctive relief,

13

the Court considers, as a final matter, the remedy to be imposed in this case.[4]  Generally, the Court orders preliminary injunctive relief to restore the Plaintiff to the position that he would have been in absent the Government's alleged unlawful conduct.  *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).  Relevant to this dispute, in *Noem v. Abrego Garcia*, the Supreme Court held that this Court may order the Government to facilitate the return of a noncitizen to the United States, to ensure that his case was handled as if it would have been had the noncitizen not been improperly removed and deported to El Salvador.  *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025); *see also Abrego Garcia v. Noem*, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025).

In this case, the Plaintiff seeks a preliminary injunction ordering the Defendants to facilitate his return to the United States from Mexico, to conduct an unlawfully withheld RFI, and enjoining the Defendants from removing him from the United States while he awaits an RFI.  ECF No. 37. The Court is satisfied that it may order the Defendants to facilitate the Plaintiff's return from Mexico as a remedy for the unlawful removal at issue in this case.  *Abrego Garcia*, 145 S. Ct. at 1018.  And so, the Court will order the Defendants to facilitate the Plaintiff's return to the United States, so that he may be afforded an RFI, and enjoin the Defendants from removing the Plaintiff from the United States while he awaits an RFI.

## V.    CONCLUSION

For the foregoing reasons, and those stated during the May 19, 2026, hearing, the Court:

(1)    **DENIES** the Defendants' motion to dismiss (ECF No. 38); and

(2)    **GRANTS-in-PART** the Plaintiff's renewed motion for a preliminary injunction (ECF No. 37).

---

[4] During the hearing held on May 19, 2026, the Plaintiff withdrew his request for the Court to order the Defendants to issue him parole documents pursuant to 8 U.S.C. § 1182(d)(5)(A).  The Court observes that, the parole statute, set forth in 8 U.S.C. § 1182(d)(5)(A), confers authority on the Attorney General to parole aliens "in his discretion" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

The Court issued an Order consistent with this Memorandum Opinion on May 19, 2026.

**IT IS SO ORDERED.**

<div align="center" style="float:right">

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

</div>